UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ISABELLA ANDRADE,

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

Defendant.

Case No. 23-cv-06125-TSH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 29

## I.    INTRODUCTION

Plaintiff Isabella Andrade filed a complaint against Defendant Costco Wholesale Corporation ("Costco") for claims arising out of Andrade's employment with Costco.  ECF No. 1-2 ("Compl.").  Pending before the Court is Costco's Motion for Summary Judgment.  ECF No. 29 ("Mot.").  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.[1]

## II.    BACKGROUND

**A.    Factual Background**

Costco, a Washington corporation with a principal place of business in Washington, is a retail business.  Compl. ¶ 2; Not. of Removal ¶ 10 (ECF No. 1).  Andrade, a California resident, was employed with Costco at all relevant times to this action.  Compl. ¶ 1; Not. of Removal ¶ 8.  In August 2020, Andrade began working for Costco, and she was employed by Costco until she resigned in November 2022.  Compl. ¶ 1; Mot. at 2:10–4:21.  Andrade was rehired by Costco in March 2023 and terminated by Costco in May 2023.  Compl. ¶¶ 1, 43; Mot. at 6:1–6, 8:13–15.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 11, 16.

1    Overall, Andrade alleges that Costco (1) discriminated against her and harassed her based

2  on her disability, race, and pregnancy; (2) retaliated against her for requesting pregnancy and

3  disability accommodations and leave; and (3) violated her rights relating to disability

4  accommodations and leave.  Compl. ¶¶ 53–54, 73–75, 106, 118, 125.

5    **1.    The Parties' Employment Relationship Between 2020–2022**

6    Andrade was first hired by Costco on August 12, 2020, as a part-time Front End Cashier

7  Assistant at the Foster City warehouse.  Mot. at 2:10–13; Andrade's Separate Statement of Facts

8  ("Pl.'s SSF") at 3:2 (ECF No. 32).[2]  Andrade's duties included "collecting carts from the parking

9  lot and bringing them to the warehouse, as well as sanitizing the carts."  Mot. at 2:15–16; Pl.'s

10  SSF at 3:7.  Employees in this position could be "assigned to collect and push shopping carts their

11  entire shift."  Mot. at 2:16–19; Pl.'s SSF at 3:12.

12    Andrade sometimes assisted in the Food Court and would need to wear gloves for safety

13  purposes.  Mot. at 3:3–4; Pl.'s SSF at 3:24.  In February 2021, Andrade "reported to a

14  representative from Briotix—Costco's third-party accommodations assistant provider—that the

15  gloves would give her a rash."  Mot. at 3:10–12; Pl.'s SSF at 4:2.  Costco has no record of

16  Andrade providing a medical note regarding glove restrictions during her first period of

17  employment.  Mot. at 3:16–19; Pl.'s SSF at 4:12.

18    The frequency of Andrade's absences "increased starting in March 2021, prompting the

19  issuance of an Employee Counseling Notice on March 8, 2021."  Mot. at 3:22–24; Pl.'s SSF at 4:

20  16.  Andrade then notified Costco of her pregnancy—over the next few months, she made several

21  requests for time off due to her pregnancy, "which Costco fully accommodated."  Mot. at 3:25–27;

22  Pl.'s SSF at 4:19.

23    Andrade alleges that she was mistreated at Costco after disclosing her pregnancy.  Andrade

---

25    [2] As a threshold matter, Costco asserts that "the majority of [Andrade's] purported 'Additional Material Facts' do not constitute factual assertions" but are instead "improper legal conclusions, subjective characterizations, or argumentative commentary."  Costco's Controverting Statement of Facts ("Def.'s CSF") at 1:6–10 (ECF No. 34-1); *see generally* Pl.'s SSF.  Costco requests "pursuant to [FRCP] 56(e)(3)–(4), that the Court either disregard these purported 'facts' as immaterial to Costco's Motion or strike them as improper."  Def.'s CSF at 1:20–25.  In ruling on Costco's Motion, the Court only considers Andrade's assertions of fact that are properly supported by evidence in the record.  *See* Fed. R. Civ. Pro. 56(e).

testified that management stationed her to stand in one place for nearly entire shifts and refused to reassign her when she expressed concerns related to pregnancy, removed a stool offered to Andrade by co-workers, and ordered her to push carts for an eight-hour shift despite company policy limiting the task to two hours.  Opp. at 3:10–15 (citing Declaration of Stephen Noel Ilg ("Ilg Decl.") (ECF No. 31), Ex. D ("Andrade Dep. Tr.") at 51:5–59:13 (ECF No. 31-4)).

On July 26, 2021, Andrade "received a second Employee Counseling Notice for excessive absenteeism, having accumulated a total of eight unexcused absences over the preceding months." Mot. at 4:4–6; Pl.'s SSF at 5:2.  Andrade states that she missed work due to severe morning sickness, and when she provided a doctor note, management told her the note was "too vague" and required additional information.  Opp. at 3:15–17 (citing Andrade Dep. Tr. at 54:21–56:14).  After Andrade provided medical documentation, Costco removed the protected absences from her disciplinary record.  Mot. at 4:6–9; Pl.'s SSF at 5:2.  Between August 2021, and February 2022, Andrade took multiple periods of approved leave related to her pregnancy.  Mot. at 4:10–13; Pl.'s SSF at 5:6.  Upon her return in February 2022, Andrade "resumed her part-time position without disclosing any disability or requesting an accommodation."  Mot. at 4:14–16; Pl.'s SSF at 5:11.

Andrade alleges that she was mistreated at Costco when she returned from pregnancy leave.  Andrade testified that a supervisor disabled her cashier ID to block an assignment at customer service, announced on the store-wide radio, "Where is Isabella, why is she not at the door?," and instead sent Andrade to the door which triggered pain, numbness, and migraines. Opp. at 3:17–21 (citing Andrade Dep. Tr. at 20:9–21:11).  At the time, Andrade was helping a customer who thought that the radio announcement was "extremely unprofessional and inappropriate"; Andrade was upset because she was not allowed to go to other areas of the warehouse to help.  Andrade Dep. Tr. at 20:9–21:11.

On November 11, 2022, Andrade resigned from her employment at Costco through email, stating:  "I cannot return to work at this time due to my inability to find child care which has placed me to have to return home to my parents for help."  Mot. at 4:19–5:9; Pl.'s SSF at 5:25. Andrade stated that at the time she resigned, she had to relocate because of her split with her partner and "didn't have anywhere else to go but back to [her] mom's who was in Washington at

the time." Mot. at 5:10–12; Pl.'s SSF at 5:25.

"At no point during [Andrade's] initial period of employment did she make any complaints of retaliation, harassment, or discrimination to anyone at Costco, nor did she assert that Costco failed to accommodate any disability or medical condition." Mot. at 5:13–16; Pl.'s SSF at 6:2.

### 2.    The Parties' Employment Relationship In 2023

In 2023, Andrade relocated back to California and reached out to her former colleague, Front-End Supervisor Veronica Mendoza, to inquire if Costco was hiring.  Mot. at 6:1–4; Pl.'s SSF at 6:6.  Andrade was again hired by Costco on March 11, 2023, as a part-time Food Service Assistant in the Foster City warehouse.  Mot. at 6:4–6; Pl.'s SSF at 6:12.  Andrade's employment was subject to a 90-day probationary period.  According to the Costco Employee Agreement acknowledged by Andrade, during this time, "her employment was at-will and could be terminated without cause."  Mot. at 8:5–12; Pl.'s SSF at 10:2.

Andrade then began experiencing a rash on her hands.  On March 27, 2023, she sent pictures of her skin condition to Foster City General Manager, Kari Shields, via text message. Opp. at 7:26–28; Def.'s CSF at 17:20.  On March 30, 2023, Andrade procured a note from her primary care physician, Dr. Sharon Chen Lee, recommending that Costco minimize her glove use and exposure to irritants to prevent further flare-ups.  Mot. at 6:16–20; Pl.'s SSF at 6:24; *see* Ilg Decl., Ex. B at 16 (ECF No. 33-3).[3]  The parties dispute the reasonableness of Costco's provided accommodation.  After requesting accommodations for her skin condition, Andrade was given initial accommodations.  Mot. at 7:4–6; Opp. at 7:28–8:5.  Costco states that it placed Andrade "in a role that did not require glove use or exposure to irritating chemicals."  Mot. at 7:1–3.  "Costco assigned tasks such as taking out garbage, sweeping near the food-court area, mopping if needed, wiping the front glass, readying the front for the next day, and refilling napkins."  Opp. at 7:28–8:2; Def.'s CSF at 17:22.  Some assigned tasks involved chemical exposure.  Opp. at 9:24–27 (citing Ilg Decl., Ex. I ("Torres Dep. Tr.") at 18:14–19:6 (ECF No. 31-9)); *see* Torres Dep. Tr. at

---

[3] For precision's sake, citations to Exhibit B are to the unredacted version, filed under seal by Andrade.  ECF No. 33-3.  The redacted version of Exhibit B was filed on the public docket.  ECF No. 31-2.

United States District Court
Northern District of California

18:14–19:6 (stating Andrade was assigned "light cleaning outside" with "a sanitizer product, which is safe; it isn't dangerous to you, so that wouldn't require gloves").  Andrade testified that the transitional assignment involved tasks that "still required chemical cleaners and gloves—for example, cleaning the soda machine required using a cleaner and wearing gloves."  Opp. at 7:28–8:5 (citing Andrade Dep. Tr. at 74:11–15, 80:24–81:3).  Andrade further testified that in April 2023, the glove use "got resolved."  *E.g.,* Def.'s CSF at 3:3 (citing Andrade Dep. Tr. at 285:23–286:9).

Andrade alleges that she was subjected to harassment and retaliation because of her skin condition and associated accommodation request.  Andrade testified that Food Court employees bullied her and called her names like "White Girl" and "Miss America," and that she told the Food Court Supervisor, Marco Torres, about the name calling.  Mot. at 7:10–22; Pl.'s SSF at 8:14–28.  Torres testified that he recalled hearing about the Miss America comment on one occasion.  Mot. at 7:21–22 (citing Declaration of Bradley D. Doucette ("Doucette Decl.") (ECF No. 29-1), Ex. 3 (Torres Dep. Tr.) at 29:2–30:13 (ECF No. 29-4)).  Andrade states that in April 2023, she reported to her supervisor that one employee told another employee, "tell White Girl to bring in the condiments," and that the supervisor said it might be a language barrier for the non-English speakers.  Mot. at 7:10–16 (citing Doucette Decl., Ex. 1 (Andrade Dep. Tr.) at 78:18–80:23 (ECF No. 29-2)).  According to Andrade, supervisors assigned her unsafe job tasks outside the scope of her employment such as scrubbing floors by hand and cleaning the food grinders and coffee machines.  Opp. at 4:6–9 (citing Andrade Dep. Tr. at 84:5–7, 89:17–19; Ilg Decl., Ex. E (Andrade Dep. Tr.) at 280:17–281:16 (ECF No. 31-5)).

Andrade received a 30-day performance review completed by Torres.  Mot. at 8 n.1; Opp. at 21:1–3.  Andrade states that Torres changed her favorable performance review because it was too positive.  Opp. at 14:10–14, 21:1–5 (citing Andrade Dep. Tr. at 85:10–86:3; Torres Dep. Tr. at 30:21–34:7).  The Assistant General Manager over ancillary departments, Daniel Nunez, directed Torres to revise his performance evaluations.  *Id.* at 23:27–24:2; Def.'s CSF at 34:25.  Torres testified that all his performance reviews "needed corrections because a lot of them were too positive."  Torres Dep. Tr. at 34:14–18.  When Nunez instructed Torres to modify Andrade's

1    review, Nunez referred to Andrade's review by itself and not to a group of reviews. *Id.* at 34:19–

2    23. Torres modified Andrade's review to point out errors that Andrade made after thinking

3    critically about what errors she made. *Id.* at 30:21–34:7. Torres states that he was asked to revise

4    all his reviews, with each review done by itself; Torres did not remove any positive comments

5    from Andrade's review. Def.'s CSF at 26:13 (citing Torres Dep. Tr. 47:7–48:15).

6        The parties dispute whether Costco provided Andrade with long-term accommodations for

7    her skin condition. Costco states that after Andrade requested accommodations, it placed her on a

8    twelve-week transitional duty assignment. Mot. at 7:4–6 (citing Doucette Decl., Ex. 6 ("Shields

9    Dep. Tr.") at 30:6–33:11, 45:5–47:21 (ECF No. 29-7); Ex. 7 at 11 ("Temporary transitional duty

10   will not exceed a maximum period of 12 weeks.") (ECF No. 29-8)). Andrade states that Costco

11   set her accommodation to expire by April 30, 2023, thirty days after Andrade's request. Opp. at

12   8:19–21 (citing Ilg Decl., Ex. A at 76 (ECF No. 31-1)). Costco sent a letter to Andrade on March

13   31, 2023, regarding transitional duty, stating:

14            We would like to offer you temporary transitional duty of Food
         Court/Lobby cleaning & expediting on a part-time basis from 3/31/23
15       to 4/30/23. . . . If your restrictions go beyond 4/30/23, this transitional
         duty assignment will be re-evaluated, pursuant to Company Policy.
16

17   Ilg Decl., Ex. A at 76. Costco did not extend Andrade's transitional duty assignment after April

18   30, 2023. Shields Dep. Tr. at 46:21–47:21.

19       In a letter dated April 3, 2023, Dr. Lee stated that there was no end date for Andrade's

20   restrictions regarding glove use and chemical exposure. Opp. at 6:23–7:14; Def.'s CSF at 17:1.

21   Dr. Lee testified that in an April 2023 call, she repeatedly described the restrictions as "potentially

22   permanent." Opp. at 7:14–15; Def.'s CSF at 17:6. On April 19, 2023, Briotix documented that

23   Dr. Lee's restrictions "are potentially permanent." Opp. at 8:16–18; Def.'s CSF at 18:19.

24   Costco's Transitional Duty Checklist instructs managers to complete a Job Accommodation

25   Survey ("JAS") if an employee's restrictions are permanent or long term. Opp. at 10:7–25; Def.'s

26   CSF at 21:13. On April 28, 2023, Costco emailed Shields, stating that a JAS must be completed

27   within 48 hours to initiate "the job assessment meeting process" for Andrade's accommodations.

28   Opp. at 9:8–15; Def.'s CSF at 19:25; *see* Ilg Decl., Ex. A at 66. Shields testified that a JAS was

United States District Court
Northern District of California

6

1    not completed for Andrade because Andrade's restrictions "had not been deemed permanent or

2    long term." Opp. at 10:19–22; Def.'s CSF at 4:17. Assistant General Manager, Marie Clare

3    McKenna, testified that she did not believe Andrade's condition was permanent. Opp. at 10:19–

4    22; Def.'s CSF at 21:19. Shields and McKenna oversaw implementing Costco's leave and

5    accommodation protocols and made decisions regarding these topics for Andrade. Opp. at 23:22–

6    27; Def.'s CSF at 34:18.

7        Andrade states that after she received accommodations for her skin condition, Costco

8    reduced her hours from 35 hours to 25 hours a week, forcing Andrade to take a second job. Opp.

9    at 4:10–11 (citing Andrade Dep. Tr. at 90:20–22, 91:17–22). On May 1, 2023, Andrade "received

10   an Employee Counseling Notice for excessive absenteeism, having accumulated four unexcused

11   absences since her rehire[.]" Mot. at 8:1–3; Pl.'s SSF at 9:21. This notice states, "[t]he sixth

12   instance of unpaid absence in any 12-month period will result in termination of employment." Ilg

13   Decl., Ex. A at 74. The notice states Andrade was absent on 3/16/23, 3/28/23, 4/4/23, and

14   4/28/23. *Id.* Regarding these absences, Andrade "does not dispute the absences and takes full

15   responsibility for them, acknowledging that she could not balance her employment at Costco with

16   a second job at Starbucks." Mot. at 9:15–17; Pl.'s SSF at 10:11; Andrade Dep. Tr. at 92:13–21.

17       On May 1, 2023, Andrade visited Dr. Lee for back pain. Dr. Lee ordered x-rays and

18   prescribed muscle relaxers. Opp. at 12:12–25 (citing Ilg Decl., Ex. B at 2); Def.'s CSF at 23:20.

19   On May 8, 2023, Andrade visited the emergency room ("ER") for "back pain and arm and leg

20   numbness." Opp. at 12:12–25 (citing Ilg Decl., Ex. B at 5). Andrade testified that she obtained a

21   note from the ER doctor excusing her from work on May 8 and May 9, 2023. *Id.* (citing Ilg Decl.,

22   Ex. B at 15); Def.'s CSF at 23:34. While in the ER on May 8, Andrade sent text messages to

23   Shields stating that she was in the ER and would "have a note for payroll." Opp. at 12:12–25

24   (citing Ilg Decl., Ex. B at 19); Def.'s CSF at 24:1. Andrade testified that on May 12, 2023, she

25   delivered the ER note to Shields and Shields refused to accept it. Opp. at 12:12–25 (citing

26   Andrade Dep. Tr. at 94:8–13). Andrade states that Shields told her, "there's no reason for you to

27   give it to me because it does not protect these days," and told Andrade that she was "in hot shit

28   right now." *Id.* at 20:9–15 (citing Andrade Dep. Tr. at 90:19–95:25). Andrade states that she

United States District Court
Northern District of California

asked Shields about FMLA coverage to excuse the missed days, and that Shields told her to "look up in the employee handbook about that." Andrade Dep. Tr. at 90:19–95:25. Shields denies refusing to accept a note from Andrade and swearing at Andrade. Def.'s CSF at 24:3 (citing Shields Dep. Tr. at 70:4–10). As General Manager, Shields had final authority to terminate probationary employees. Opp. at 23:24–26; Def.'s CSF at 33:26.

Because Andrade "was absent two additional times" following the notice on May 1, Costco issued a second Employee Counseling Notice on May 12, 2023. Mot. at 8:3–5; Pl.'s SSF at 9:24. This notice states that Andrade could receive an unpaid, three-day suspension for further violations. Mot. at 8:21–24; Pl.'s SSF at 12:21. Costco did not suspend Andrade. Pl.'s SSF at 12:24; *see* Mot. at 8:21–9:14 (stating that language relating to a three-day suspension was "incorrect" and inconsistent with probationary employee status). The notice also states, "[t]he sixth instance of unpaid absence in any 12-month period will result in termination of employment." Ilg Decl., Ex. A at 72. The notice states that Andrade was absent on 3/16/23, 3/28/23, 4/4/23, 4/28/23, and 5/10/23. *Id.*

Costco terminated Andrade's employment on May 15, 2023. Mot. at 8:13–15; Pl.'s SSF at 10:6. The parties dispute the reason for Andrade's termination. Costco states that it terminated Andrade's employment "following the second Employee Counseling Notice for excessive absenteeism—and in light of [Andrade's] probationary status." Mot. at 8:13–15. Andrade alleges that Costco terminated her employment "because she sought protected medical leave and accommodations, not for 'attendance' reasons." Opp. at 20:9–10. Andrade testified that after her termination, she suffered sustained distress, lost her housing, took psychotropic medication, and sought counseling. *Id.* at 23:7–13 (citing Andrade Dep. Tr. at 172:1–14, 312:9–24); Def.'s CSF at 34:4. Costco states that a myriad of alternate stressors "wholly unrelated to her employment" affected Andrade's mental and physical well-being. Def.'s CSF at 34:13.

**B.    Procedural Background**

On October 25, 2023, Andrade filed her complaint in the San Mateo Superior Court, Case No. 23-CIV-05090, against Costco and Does 1–100. Not. of Removal (ECF No. 1), Ex. A ("Compl.") (ECF No. 1-2). Andrade alleges eight causes of action under California law:  (1)

8

1   Unlawful Retaliation in Violation of Public Policy (Cal. Lab. Code §§ 98.6, 230, 232, 232.5,

2   1102.5); (2) Wrongful Termination in Violation of Public Policy; (3) Discrimination and

3   Harassment under the Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code §§ 12940 *et*

4   *seq.*); (4) Failure to Prevent and Investigate Discrimination and Harassment under FEHA; (5)

5   Failure to Provide Reasonable Accommodation under FEHA; (6) Failure to Engage in Interactive

6   Process under FEHA; (7) Violation of California Family Rights Act ("CFRA")/Family Medical

7   Leave Act ("FMLA") Rights (Cal. Gov't Code § 12945.2, 29 C.F.R. § 825.302); and (8)

8   Intentional Infliction of Emotional Distress.  Compl. ¶¶ 45–161.  Andrade seeks, *inter alia*, civil

9   penalties, compensatory damages, and punitive damages.  *Id.* at 34.

10      Costco removed the matter to this Court on November 27, 2023.  ECF No. 1.  That same

11  day, Costco filed an answer to the complaint in the San Mateo Superior Court.  Not. of Removal,

12  Ex. B (Answer) (ECF No. 1-3).

13      On September 4, 2025, Costco filed a motion for summary judgment (ECF No. 25) but

14  failed to file a statement of facts in compliance with the Court's February 22, 2024, case

15  management order.  ECF No. 18.  The Court ordered Costco to file a revised motion by September

16  25, 2025, that complied with the case management order.  ECF No. 26.

17      On September 25, 2025, Costco filed the instant Motion for Summary Judgment.  ECF No.

18  29 ("Mot.").  On October 10, 2025, Andrade filed an Opposition.  ECF No. 30 ("Opp.").  On

19  October 16, 2025, Costco filed a Reply.  ECF No. 34 ("Reply").

20                          **III.   LEGAL STANDARD**

21      Summary judgment is proper where there is "no genuine dispute as to any material fact and

22  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving

23  for summary judgment bears the initial burden of identifying those portions of the pleadings,

24  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

25  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome

26  of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

27  reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

28  U.S. 242, 248 (1986).

United States District Court
Northern District of California

9

1      If the moving party meets its initial burden, the opposing party must then set forth specific

2  facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.

3  at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving

4  party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the

5  task of the Court "to scour the record in search of a genuine issue of triable fact."  *Keenan v.*

6  *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with

7  reasonable particularity the evidence that precludes summary judgment."  *Id.*; *see also Cafasso,*

8  *U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (noting the nonmoving

9  party "must set forth non-speculative evidence of specific facts, not sweeping conclusory

10  allegations") (cleaned up).  Thus, "[t]he district court need not examine the entire file for evidence

11  establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with

12  adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*,

13  237 F.3d 1026, 1031 (9th Cir. 2001); *see also Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*,

14  626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")

15  (cleaned up).

16      "While the evidence presented at the summary judgment stage does not yet need to be in a

17  form that would be admissible at trial, the proponent must set out facts that it will be able to prove

18  through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)

19  (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must

20  be made on personal knowledge, set out facts that would be admissible in evidence, and show that

21  the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party

22  fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not

23  significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249–50

24  (cleaned up).

25                                    **IV.  DISCUSSION**

26      Costco moves for summary judgment on each of Andrade's substantive claims, as well as

27  her claim for punitive damages, asserting that her claims fail because (1) "Costco engaged in the

28  interactive process and fully accommodated all of [Andrade's] accommodation requests

United States District Court
Northern District of California

throughout her employment"; and (2) "[Andrade] was terminated due to absenteeism, which was a lawful and documented basis for her separation." Mot. at 1:16–23. Andrade contends that summary judgment is improper because "a reasonable trier of fact could find for [her]" on each of her claims. Opp. at 2:25–26.

In sum, the Court concludes that there are genuine disputes of material fact regarding Andrade's FEHA Retaliation, Wrongful Termination, FEHA Discrimination, FEHA Harassment, Failure to Prevent and Investigate Discrimination and Harassment, Failure to Provide Reasonable Accommodation, Failure to Engage in Interactive Process, Violation of CFRA/FMLA Rights, and Intentional Infliction of Emotional Distress claims. Therefore, summary judgment for Costco on these claims is not warranted. However, the Court concludes that Andrade fails to adduce evidence of required elements for her Retaliation claim under the Labor Code and claim for punitive damages. Therefore, summary judgment for Costco on these claims is warranted.

## A.    Retaliation Claim (Claim 1)

Andrade alleges that Costco retaliated against her and terminated her employment because she requested pregnancy and disability accommodations. Compl. ¶¶ 53–54. Costco argues that summary judgment in its favor is appropriate on Andrade's Retaliation claim under the California Labor Code and under FEHA, to the extent Andrade alleges a retaliation claim under FEHA. Mot. at 10:19–16:1.

As a threshold matter, the Court concludes that Andrade alleges retaliation under both the Labor Code and FEHA. In her Complaint, Andrade references both the Labor Code and FEHA under her allegations specific to Claim 1 for Retaliation. *See* Compl. ¶¶ 47–52. Moreover, in her Opposition, Andrade discusses retaliation under FEHA. *See* Opp. at 5:27–6:10, 18:4–9, 24:28–25:3. The Court addresses each of Andrade's retaliation claims in turn below.

### 1.    Retaliation Claim Under The Labor Code

Andrade alleges retaliation under five sections of the California Labor Code. Compl. ¶¶ 47–49. Costco argues that these claims fail because Andrade "alleges no protected activity under the Labor Code." Mot. at 13:17–16:1. Andrade contends that she alleges protected activity of "asserting workplace rights and whistleblowing." Opp. at 21:20–21.

1    In her Opposition, Andrade responds only to Costco's arguments regarding Labor Code

2  sections 98.6 and 1102.5. *See id.* at 6:17–20, 18:10–17, 20:6, 21:20–21.  Because Andrade does

3  not respond to Costco's arguments regarding Labor Code sections 230, 232, and 232.5, the Court

4  finds that these claims are abandoned. *See Long v. Pend Oreille Cnty. Sheriff's Dep't*, 269 F.

5  App'x 749, 751 (9th Cir. 2008) ("Appellants abandoned their false arrest claim by failing to raise

6  it in their opposition to summary judgment."); *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F.

7  Supp. 3d 891, 919 (N.D. Cal. 2016) ("When a non-moving party opposes summary judgment with

8  respect to some claims, but not others, a court may, when appropriate, infer from a party's partial

9  opposition that relevant claims or defenses that are not defended have been abandoned.") (cleaned

10  up).  The Court thus addresses Andrade's retaliation claim under only Labor Code sections 98.6

11  and 1102.5.

12    Under California law, it is unlawful for an employer to retaliate against an employee for

13  engaging in protected activity under the Labor Code. *See* Cal. Lab. Code § 98.6(a) ("A person

14  shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse

15  action against any employee or applicant for employment because the employee or applicant

16  engaged in any conduct delineated in this chapter[.]").  Labor Code section 1102.5

> provides whistleblower protections to employees who disclose
> wrongdoing to authorities.  As relevant here, section 1102.5 prohibits
> an employer from retaliating against an employee for sharing
> information the employee 'has reasonable cause to believe . . .
> discloses a violation of state or federal statute' or of 'a local, state, or
> federal rule or regulation' with a government agency, with a person
> with authority over the employee, or with another employee who has
> authority to investigate or correct the violation.

22  *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022) (citing Cal. Lab. Code §

23  1102.5(b)) (ellipsis in original).  "An employee engages in activity protected by the statute when

24  the employee discloses reasonably based suspicions of illegal activity." *Ross v. Cnty. of Riverside*,

25  36 Cal. App. 5th 580, 592 (2019) (cleaned up).  While an employee need "not expressly state in

26  his disclosures that he believed the [employer] was violating or not complying with a specific state

27  or federal law," the employee must "disclose information and [must] reasonably believe the

28  information discloses unlawful activity." *Id.* at 592–93 (alterations added).

United States District Court
Northern District of California

1       "Section 12945 of the FEHA, known as the Pregnancy Disability Leave Law (PDLL), is

2   based on the federal Pregnancy Discrimination Act (PDA) (42 U.S.C. § 2000e(k)) and ensures

3   equal employment opportunity by affording specific protections for pregnant employees."  *Paleny*

4   *v. Fireplace Prods. U.S., Inc.*, 103 Cal. App. 5th 199, 207 (2024); *see* Cal. Gov't Code § 12945

5   (PDLL).  To prevail on a PDLL claim, a plaintiff must show that she was denied "a leave of

6   absence for a reasonable period, not to exceed four months," or that she was denied

7   "accommodation for a condition related to pregnancy, childbirth, or related medical condition if

8   such accommodation is requested by the employee and recommended by her health care

9   provider."  *Paleny*, 103 Cal. App. 5th at 208 (cleaned up).

10       Here, the Court finds that the undisputed evidence shows that Andrade cannot demonstrate

11   that she disclosed conduct that she believed was unlawful.  Andrade posits that because Labor

12   Code section 1102.5(b) "protects internal disclosures to a supervisor of reasonably suspected legal

13   violations," she alleges protected activity as she "repeatedly told supervisors and HR about

14   FEHA/PDLL noncompliance (dangerous assignments despite restrictions, refusal to

15   accommodate, harassment), and she reported working-condition issues tied to glove/chemical

16   exposure."  Opp. at 18:10–17.  Costco responds that Andrade fails to show "that she disclosed

17   specific conduct by Costco that violated California law[.]"  Reply at 12:3–9.  The Court agrees.

18   Indeed, Andrade concedes that she did not "make any complaints of retaliation, harassment, or

19   discrimination to human resources, her supervisors, or management, nor did she assert to anyone

20   at Costco that Costco failed to accommodate any disability or medical condition" during her first

21   period of employment.  Pl.'s SSF at 6:2.  Andrade testified that during her second period of

22   employment, she shared pictures of her skin condition with Shields and told Torres and a second

23   supervisor that her coworkers referred to her as "White Girl" and "Miss America."  Opp. at 7:26–

24   28; Pl.'s SSF at 8:14–28.  But her claim is deficient because she does not point to any testimony

25   showing that she believed the information disclosed unlawful activity by Costco.  Therefore,

26   because Andrade cannot prove that she disclosed unlawful activity to Costco, an essential element

27   of her Labor Code claim, summary judgment for Costco is warranted.  *Ross*, 36 Cal. App. 5th at

28   592.

13

Accordingly, the Court **GRANTS** Costco's Motion for Summary Judgment on Andrade's Labor Code Retaliation claim.

### 2.    Retaliation Claim Under FEHA

Costco argues that Andrade's retaliation claim under FEHA fails because Andrade (1) cannot establish a *prima facie* case of retaliation; and (2) cannot "show pretext to rebut Costco's legitimate business reasons for her termination." Mot. at 11:1–13:16.

Under FEHA, it is unlawful

> [f]or an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted.

Cal. Gov't Code § 12940(m)(2). It is also unlawful

> [f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

*Id.* at § 12940(h).

California has adopted the three-stage *McDonnell Douglas* burden-shifting test for FEHA retaliation claims. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973)). "[T]o establish a *prima facie* case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Id.* (cleaned up). "Once an employee establishes a *prima facie* case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional retaliation." *Id.* (cleaned up). "Actions for retaliation are inherently fact-driven; it is the jury, not the court, that is charged with determining the facts." *McCoy v. Pac. Mar. Ass'n*, 216 Cal. App. 4th 283, 299 (2013) (cleaned up).

1

#### a.    *Prima Facie* Case of Retaliation

2      Costco argues that Andrade "cannot establish her *prima facie* case of retaliation because

3  she cannot show a causal connection between her alleged protected activity (her pregnancy and/or

4  disability leave) and her termination." Mot. at 11:16–17.  Andrade counters that "Costco's

5  discipline, hour-cuts, negative re-evaluation, and termination followed [her] repeated protected

6  complaints (pregnancy/medical limitations; allergy; racially charged abuse) and her requests for

7  accommodation and leave.  That temporal proximity and pattern of antagonism readily support a §

8  12940(h) claim."  Opp. at 18:6–9.

9      The FEHA retaliation provisions protect employees against adverse action in the form of

10 "compensation or in the terms, conditions, and privileges of employment." *Yanowitz*, 36 Cal. 4th

11 at 1053.  Under the California Supreme Court's "materiality" test, adverse actions include "so-

12 called 'ultimate employment actions' such as termination or demotion, but also the entire

13 spectrum of employment actions that are reasonably likely to adversely and materially affect an

14 employee's job performance or opportunity for advancement in his or her career." *Id.* at 1053–54.

15 "[I]n determining whether an employee has been subjected to treatment that materially affects the

16 terms and conditions of employment, it is appropriate to consider the totality of the

17 circumstances[.]" *Id.* at 1036.

18     To demonstrate a causal link between an adverse action and a protected activity, a plaintiff

19 must show that the protected activity was a "substantial motivating factor" for the employer's

20 action. *Alamo v. Prac. Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 483 (2013).  "The retaliatory

21 motive is proved by showing that plaintiff engaged in protected activities, that his employer was

22 aware of the protected activities, and that the adverse action followed within a relatively short time

23 thereafter." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 615 (1989).

24     Here, construing all evidence in the light most favorable to Andrade, the Court finds that a

25 reasonable jury could find a causal link between Andrade's protected activity and Costco's

26 adverse action.  It is undisputed that Andrade engaged in protected activities—requesting leave

27 and accommodations related to her pregnancy and skin condition—and that Costco was aware of

28 these requests.  Mot. at 4:10–13, 6:16–20; Pl.'s SSF at 5:5, 6:24.  Costco asserts that "the adverse

1    employment action at issue must be [Andrade's] termination . . . because she has no evidence of

2    any other adverse employment action." Mot. at 11:18–19:5. But that is incorrect. Andrade

3    proffers evidence of adverse actions—in the form of her testimony—that she experienced name

4    calling, negative re-evaluation, assignment to unsafe tasks, hour-cuts, and termination following

5    her leave/accommodation requests related to pregnancy and her skin condition. Andrade Dep. Tr.

6    at 51:5–59:13, 84:5–7, 89:17–19, 90:20–22, 91:17–22, 280:17–281:16. And it is undisputed that

7    Andrade requested accommodations for her skin condition on March 30, 2023, that Andrade

8    missed work on May 8–9, 2023, following a trip to the ER for a back condition, and that Costco

9    terminated her employment on May 15, 2023. Mot. at 6:16–20, 8:13–15; Pl.'s SSF at 6:24, 10:5;

10    Def.'s CSF at 23:34. In response to Costco's argument on causation, Andrade posits that the

11    temporal proximity between her requests for leave and accommodations and Costco's adverse

12    actions establishes a causal link. Opp. at 18:6–9. Based on this evidence, a jury could find that

13    Andrade engaged in protected activities, that Costco was aware of the protected activities, and that

14    the adverse actions followed within a relatively short time thereafter; this is sufficient to establish

15    causation. *Fisher*, 214 Cal. App. 3d at 615. Therefore, the Court finds that Andrade establishes a

16    *prima facie* case of retaliation under FEHA.

17                            **b.      Pretext**

18            Costco asserts that it terminated Andrade for "excessive absenteeism," which is a

19    legitimate business reason. Mot. at 13:1–16. Costco argues that Andrade cannot establish pretext

20    because she "has not and cannot produce any 'specific' or 'substantial' evidence to show that

21    Costco's decision to terminate her was because of pregnancy leave, disability leave, or any other

22    protected activity." *Id.* Andrade contends that "a reasonable jury could find that Costco

23    terminated [her] because she sought protected medical leave and accommodations, not for

24    'attendance' reasons." Opp. at 20:9–19.

25            To show pretext, "the employee must demonstrate such weaknesses, implausibilities,

26    inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

27    its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence

28    infer that the employer did not act for the asserted non-discriminatory reasons." *Jumaane v. City*

United States District Court
Northern District of California

1   *of Los Angeles*, 241 Cal. App. 4th 1390, 1409 (2015) (emphasis in original) (cleaned up).

2          Here, construing all evidence in the light most favorable to Andrade, the Court finds that a

3   reasonable jury could find that Costco's actions were based on a discriminatory motive.  First,

4   Andrade points to inconsistencies between Costco's notices and policies and its actions.  It is

5   undisputed that Costco's second Employee Counseling Notice on May 12, 2023, states that

6   Andrade could receive an unpaid, three-day suspension for further violations, yet Costco did not

7   suspend Andrade; instead, it terminated her employment on May 15, 2023.  Mot. at 8:21–24; Pl.'s

8   SSF at 12:21–24.  Costco asserts that the language relating to a three-day suspension is "incorrect"

9   and inconsistent with probationary employee status.  Mot. at 8:21–9:14.  But Costco's explanation

10  merely creates an issue of fact regarding this statement in the notice.

11         Second, Andrade asserts that Costco counted her medically excused days on May 8 and 9,

12  2023, as unexcused, arguing that Shields's conduct of not accepting her note and swearing at her

13  demonstrate that "the dates explicitly listed in the doctor's notes were part of the reason GM

14  Shields chose to terminate her."  Opp. at 16:8–21.  Costco responds that Andrade's "absences on

15  May 8 and 9, 2023 were not counted against her attendance record."  Reply at 6:1–2.  However,

16  the evidence contradicts Costco's assertion.  As Andrade points out, given the inconsistencies

17  between the notice and Costco's actions, it is not dispositive "that the dates listed on the [second]

18  Counseling Notice did not include dates covered by available doctor's notes."  Opp. at 16:8–21.

19  In addition to the suspension language, the second notice also states, "[t]he sixth instance of

20  unpaid absence in any 12-month period will result in termination of employment," and it goes on

21  to state that Andrade was absent on 3/16/23, 3/28/23, 4/4/23, 4/28/23, and 5/10/23.  Ilg Decl., Ex.

22  A at 72.  Thus, Andrade was purportedly terminated for five absences, not six as indicated in the

23  policy on the notice.  Indeed, Costco's shifting sands approach to Andrade's termination further

24  belie its claim that it did not count the May 8 and 9 absences against Andrade.  Costco states as

25  fact that Andrade received the second notice "after she was absent two additional times since her

26  prior Employee Counseling Notice."  Costco's Separate Statement of Facts at 6:14 (ECF No. 29-

27  9); *see* Mot. at 8:3–5.  Then in its Reply, Costco states that the second notice lists "*an additional*

28  *absence* on May 10, 2023."  Reply at 5:23–6:1 (emphasis added).  It is unclear what happened to

United States District Court
Northern District of California

17

1    the second absence.  It is also unclear how Costco was able to exclude Andrade's absences

2    covered by the doctor note when the note was "not produced by Costco or in any of its files." *Id.*

3    at 6:3–5.  In any case, the Court cannot resolve these questions of fact on summary judgment.

4    Overall, these inconsistencies and contradictions demonstrate that a jury could find that Costco did

5    not terminate Andrade for excessive absences.  *Jumaane*, 241 Cal. App. 4th at 1409.  Therefore,

6    summary judgment in Costco's favor is not warranted.

7         Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

8    FEHA Retaliation claim.

9    **B.    Wrongful Termination Claim (Claim 2)**

10        Costco argues that summary judgment in its favor is appropriate on Andrade's Wrongful

11   Termination claim because it is "derivative of her underlying discrimination, harassment, and

12   retaliation claims—which themselves fail." Mot. at 22:18–23:3.  Andrade contends that summary

13   judgment is improper because "[Costco's] behavior, as the evidence shows, contravenes

14   fundamental policies embodied in FEHA (Gov't Code §§ 12940(a), (h), (j), (k), (m), (n)),

15   CFRA/PDLL (Gov't Code §§ 12945, 12945.2), and the Labor Code (e.g., §§ 98.6, 1102.5)."  Opp.

16   at 19:26–22:1.

17        California courts

18             have created an exception to, or qualification of, the at will
19             employment principle.  The exception is this:  An employer may not
             discharge an at will employee for a reason that violates fundamental
20           public policy.  This exception is enforced through tort law by
             permitting the discharged employee to assert against the employer a
21           cause of action for wrongful discharge in violation of fundamental
             public policy.

22   *Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 887 (1997).

23        Here, the Court finds that because Andrade's FEHA claims survive summary judgment, so

24   too does her claim for Wrongful Termination.  *See, e.g., City of Moorpark v. Superior Ct.*, 18 Cal.

25   4th 1143, 1161 (1998) ("We conclude that disability discrimination can form the basis of a

26   common law wrongful discharge claim.").

27        Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

28   Wrongful Termination claim.

United States District Court
Northern District of California

18

1  **C.      Discrimination And Harassment Claim (Claim 3)**

2        Andrade brings causes of action under FEHA for both discrimination and harassment.

3  Compl. ¶¶ 67–83.  Costco argues that summary judgment in its favor is appropriate on both

4  Andrade's Discrimination claim and Harassment claim under FEHA.  Mot. at 16:2–20:13.

5        Andrade alleges that Costco discriminated against her and harassed her based on her

6  disability, race, and pregnancy.  Compl. ¶¶ 73–75; *see also* Opp. at 13:19–21 ("[Andrade] is a

7  member of multiple protected classes (sex/pregnancy and disability/medical condition").  Under

8  FEHA, an employee's race, sex, physical disability, mental disability, and reproductive health

9  decisionmaking are all protected characteristics.  Cal. Gov't Code § 12940(a).  "Sex" includes

10  "[p]regnancy or medical conditions related to pregnancy."  *Id.* at § 12926(r)(1)(A).  Therefore,

11  Andrade's claims concern three characteristics protected under FEHA.  The question is whether

12  Andrade suffered discrimination or harassment because of her protected characteristics.

13        **1.      Discrimination Claim**

14        Costco argues that Andrade's discrimination claim fails because Andrade (1) "cannot

15  establish a *prima facie* case of discrimination"; and (2) "cannot rebut Costco's legitimate, non-

16  discriminatory reason for her termination by establishing pretext."  Mot. at 16:2–18:5.

17        Under FEHA, it is unlawful for an employer, because of an employee's protected

18  characteristic, "to discharge the person from employment or from a training program leading to

19  employment, or to discriminate against the person in compensation or in terms, conditions, or

20  privileges of employment."  Cal. Gov't Code § 12940(a).  "FEHA's discrimination provision

21  addresses only *explicit* changes in the 'terms, conditions, or privileges of employment'; that is,

22  changes involving some *official action taken by the employer*."  *Roby v. McKesson Corp.*, 47 Cal.

23  4th 686, 706 (2009) (internal citation omitted) (emphasis in original).

24        California has adopted the three-stage *McDonnell Douglas* burden-shifting test for

25  trying claims of discrimination based on a theory of disparate treatment.  *Guz v. Bechtel Nat. Inc.*,

26  24 Cal. 4th 317, 354 (2000).  To establish a *prima facie* case, the plaintiff generally "must provide

27  evidence that (1) he was a member of a protected class, (2) he was qualified for the position he

28  sought or was performing competently in the position he held, (3) he suffered an adverse

United States District Court
Northern District of California

19

1    employment action, such as termination, demotion, or denial of an available job, and (4) some

2    other circumstance suggests discriminatory motive." *Id.* at 355.  The burden then "shifts to the

3    employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine

4    issue of fact and to justify a judgment for the employer, that its action was taken for a legitimate,

5    nondiscriminatory reason." *Id.* at 355–56 (cleaned up).  If the employer sustains this burden, the

6    "plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for

7    discrimination, or to offer any other evidence of discriminatory motive." *Id.* at 356.

8    a.    ***Prima Facie* Case of Discrimination**

9        Costco argues that Andrade cannot establish a prima facie case of discrimination because

10   "there is no evidence that she suffered an adverse employment action *because of* any protected

11   characteristic." Mot. at 16:18–17:2 (emphasis in original).

12       To establish a causal link between an adverse action and a protected characteristic in mixed

13   motive cases, a plaintiff must "show that discrimination was a *substantial* motivating factor, rather

14   than simply *a* motivating factor" for the employer's action. *Harris v. City of Santa Monica*, 56

15   Cal. 4th 203, 232 (2013) (emphasis in original).

16       Here, construing all evidence in the light most favorable to Andrade, the Court finds that a

17   reasonable jury could find that Andrade suffered an adverse employment action because of her

18   disability.  Costco asserts that Andrade "fails to list a single adverse employment action and link it

19   to a protected characteristic." Reply at 7:15–19.  Not so.  Andrade contends that a jury could find

20   that she suffered adverse employment actions in the form of "loss of hours, discipline, termination,

21   [and] removal from favorable duties." Opp. at 14:17–19.  As discussed, a factual dispute exists

22   regarding whether Costco counted Andrade's absences following her ER visit for her back

23   condition against her in its termination decision.  *See supra*, Part IV.A.2.b.  Costco does not

24   dispute that Andrade's back condition is a disability.  Mot. at 20:27–21:2.  As such, a jury could

25   find that Costco terminated Andrade's employment because she missed work due to her disability.

26   In other words, a jury could find that Costco terminated Andrade's employment *because of* her

27   disability.  Further, Costco's argument that Andrade's discrimination claim fails because she

28   "relies solely on her own uncorroborated assertions" is unavailing.  Reply at 7:20–8:11.

20

United States District Court
Northern District of California

1   Andrade's testimony *is* evidence of what she experienced, and Costco cites to no authority that

2   Andrade is required to "corroborate" her own assertions.[4]  *See* Fed. R. Civ. P. 56(c) (allowing the

3   use of deposition testimony in a summary judgment motion).  Even so, as discussed, Andrade also

4   points to the second Employee Counseling Notice to corroborate her testimony that her absences

5   on May 8 and 9 prompted Costco's termination decision.  Therefore, the Court finds that Andrade

6   establishes a *prima facie* case of discrimination under FEHA.

7           **b.    Pretext**

8           Costco asserts that it terminated Andrade for "excessive absenteeism," which is a

9   legitimate business reason.  Mot. at 13:1–16.  Costco argues that Andrade fails to establish pretext

10  because she "presents no specific and substantial evidence suggesting that her termination was

11  motivated by her race, pregnancy, or disability."  *Id.* at 17:3–11.  Andrade contends that Costco's

12  "actions, together with the biased comments and selective assignments, support an inference of

13  discriminatory motive and pretext[.]"  Opp. at 14:10–26.

14          To show pretext, a plaintiff "must offer substantial evidence that the employer's stated

15  nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the

16  employer acted with a discriminatory animus, or a combination of the two, such that a reasonable

17  trier of fact could conclude the employer engaged in intentional discrimination."  *Swanson v.*

18  *Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 966 (2014).  "A plaintiff's *prima facie* case,

19  combined with sufficient evidence to find that the employer's asserted justification is false, may

20  permit the trier of fact to conclude that the employer unlawfully discriminated."  *Diego v. City of*

21  *Los Angeles*, 15 Cal. App. 5th 338, 351 (2017) (cleaned up).

22          Here, construing all evidence in the light most favorable to Andrade, the Court finds that a

23  reasonable jury could find that Costco's actions were based on a discriminatory motive.  As

24  discussed, based on the inconsistencies and contradictions in Costco's assertion that it terminated

25

26  _____

27  [4] In its Motion, Costco argues that "it is well-established that uncorroborated, 'self-serving testimony' does not create a genuine issue of material fact, especially where the testimony is contradicted by the evidence."  Mot. at 10:6–17.  Costco then cites to a panoply of inapposite

28  cases.  *Id.*  Unlike in those cases, Costco proffers no video, audio, photographic, or medical evidence that contradicts Andrade's testimony.

1    Andrade for "excessive absenteeism," a jury could find that Costco's asserted justification for

2    termination is false.  *See supra*, Part IV.A.2.b.  Therefore, summary judgment in Costco's favor is

3    not warranted.

4        Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

5    FEHA Discrimination claim.

6        **2.    Harassment Claim**

7        Costco argues that Andrade's harassment claim fails "because the alleged conduct was not

8    severe or pervasive."  Mot. at 18:6–20:13.  Andrade contends that a jury could find that she

9    suffered harassment in the form of "slurs, ostracism, deliberately painful or unsafe assignments,

10   public humiliation via the company radio, etc."  Opp. at 14:17–19.

11       Under FEHA, it is unlawful for an employer to harass an employee because of an

12   employee's protected characteristic.  Cal. Gov't Code § 12940(j)(1).  Harassment of an employee

13          shall be unlawful if the entity, or its agents or supervisors, knows or
            should have known of this conduct and fails to take immediate and
14          appropriate corrective action. . . . An entity shall take all reasonable
            steps to prevent harassment from occurring.  Loss of tangible job
15          benefits shall not be necessary in order to establish harassment.

16   *Id.*  Under FEHA,

17          harassment creates a hostile, offensive, oppressive, or intimidating
            work environment and deprives victims of their statutory right to
18          work in a place free of discrimination when the harassing conduct
            sufficiently offends, humiliates, distresses, or intrudes upon its
19          victim, so as to disrupt the victim's emotional tranquility in the
            workplace, affect the victim's ability to perform the job as usual, or
20          otherwise interfere with and undermine the victim's personal sense of
            well-being.
21

22   *Id.* at § 12923(a).  "A single incident of harassing conduct is sufficient to create a triable issue

23   regarding the existence of a hostile work environment if the harassing conduct has unreasonably

24   interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive

25   working environment."  *Id.* at § 12923(b).

26       "[H]arassment focuses on situations in which the *social environment* of the workplace

27   becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an

28   offensive message to the harassed employee."  *Roby*, 47 Cal. 4th at 706 (emphasis in original).  To

United States District Court
Northern District of California

1    prevail on a claim for harassment under FEHA, "an employee must show she was subjected

2    to harassing conduct that was (1) unwelcome; (2) because of [a protected characteristic]; and (3)

3    sufficiently severe or pervasive to alter the conditions of her employment and create an abusive

4    work environment." *Bailey v. San Francisco Dist. Attorney's Off.*, 16 Cal. 5th 611, 627 (2024)

5    (alteration added).   "In addition, she must establish that the offending conduct was imputable to

6    her employer." *Id.*

7         "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all

8    the circumstances including the frequency of the discriminatory conduct; its severity; whether it is

9    physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

10   interferes with an employee's work performance." *Lyle v. Warner Bros. Television Prods.*, 38

11   Cal. 4th 264, 283 (2006).   Whether conduct is "sufficiently severe so as to create a hostile work

12   environment" is a question of fact.   *Bailey*, 16 Cal. 5th at 634.   "Harassment cases are rarely

13   appropriate for disposition on summary judgment." Cal. Gov't Code § 12923(e).

14        Here, construing all evidence in the light most favorable to Andrade, the Court finds that a

15   reasonable jury could find that Costco's conduct was severe or pervasive enough to alter the

16   conditions of Andrade's employment.   Andrade testified that after disclosing her pregnancy,

17   management stationed her to stand in one place for nearly entire shifts and refused to reassign her

18   when she expressed concerns related to pregnancy, removed a stool offered to Andrade by co-

19   workers, and ordered her to push carts for an eight-hour shift despite company policy limiting the

20   task to two hours.   Andrade Dep. Tr. at 51:5–59:13.   She testified that when she returned from

21   pregnancy leave, a supervisor disabled her cashier ID to block an assignment at customer service,

22   announced on the store-wide radio, "Where is Isabella, why is she not at the door?," and instead

23   sent Andrade to the door which triggered pain, numbness, and migraines. *Id.* at 20:9–21:11.   And

24   she testified that after requesting an accommodation for her skin condition, Food Court employees

25   bullied her and called her names like "White Girl" and "Miss America," supervisors took no

26   actions to remedy the bullying, supervisors assigned her unsafe job tasks outside the scope of her

27   employment such as scrubbing floors by hand and cleaning the food grinders and coffee machines,

28   and Costco reduced her hours from 35 hours to 25 hours a week. *Id.* at 84:5–7, 89:17–19, 90:20–

23

1    22, 91:17–22, 280:17–281:16.  Viewed in the aggregate, from the perspective of a reasonable

2    person in Andrade's position, considering all the circumstances, a jury could find that the conduct

3    experienced by Andrade was objectively severe or pervasive.  *Lyle*, 38 Cal. 4th at 283.

4         Costco's remaining arguments are unpersuasive.  Costco asserts that Andrade waived her

5    harassment claim because she did "not distinguish between the two distinct causes of action—

6    discrimination and harassment" in her Opposition.  Reply at 9:20–25.  The Court disagrees.  While

7    Andrade's Opposition may not be a model of clarity, Andrade discusses the legal and factual

8    support for both types of claims.  Opp. at 12:26–15:5.  Moreover, Costco's argument that

9    Andrade's harassment claim fails because she did not address "its detailed analysis of severity and

10   pervasiveness" falls flat.  Reply at 9:24–25.  Costco frames its discussion on this element around

11   the argument that Andrade's "myriad of alleged one-off events that occurred over her employment

12   . . . were so minor and minute (if they even occurred) as to not be actionable under California

13   law."  Mot. at 20:9–13.  But that is the wrong standard.  In determining whether an environment is

14   hostile or abusive, a court must look at all the circumstances, including the frequency of the

15   discriminatory conduct.  *Lyle*, 38 Cal. 4th at 283.  Andrade properly addressed Costco's argument

16   on severity and pervasiveness by describing the various conduct that she experienced and arguing

17   that the Court should consider the acts in the aggregate to assess the sufficiency of her claim.

18   Opp. at 12:26–14:26.  Therefore, summary judgment in Costco's favor is not warranted.

19        Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

20   FEHA Harassment claim.

21   **D.    Failure To Prevent And Investigate Discrimination And Harassment Claim (Claim 4)**

22        Andrade alleges that Costco "did not investigate [her] complaints or take action to stop the

23   harassment and discrimination."  Compl. ¶¶ 93–94.  Costco argues that summary judgment in its

24   favor is appropriate on Andrade's Failure to Prevent and Investigate Discrimination and

25   Harassment claim under FEHA because it is "derivative of her underlying discrimination,

26   harassment, and retaliation claims—which themselves fail."  Mot. at 22:18–23:3.  Andrade

27   contends that even if her underlying FEHA claims are insufficient, "Costco's inaction in the face

28   of reported slurs and targeting violates the separate FEHA duty to prevent discrimination [and]

24

1    harassment." Opp. at 14:27–28.

2        Under FEHA, it is unlawful

3            [f]or an employer, labor organization, employment agency,
            apprenticeship training program, or any training program leading to
4            employment, to fail to take all reasonable steps necessary to prevent
            discrimination and harassment from occurring.
5

6    Cal. Gov't Code § 12940(k).

7        Here, the parties agree that Claim 4 rises and falls with the underlying FEHA violations.

8    Mot. at 22:18–23:3; Opp. at 18:23–24.  The Court agrees and finds that because Andrade's

9    discriminations and harassment claims survive, so too does her failure to prevent discrimination

10   and harassment claim.  *Contra Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 288–89

11   (1998) ("We do not believe the statutory language supports recovery on such a private right of

12   action where there has been a specific factual finding that no such discrimination or harassment

13   actually occurred at the plaintiff's workplace.").  Therefore, summary judgment in Costco's favor

14   is not warranted.

15       Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

16   Failure to Prevent and Investigate Discrimination and Harassment claim.

17   **E.    Failure To Provide Reasonable Accommodation Claim (Claim 5)**

18       Andrade alleges that Costco "failed to provide reasonable accommodations with respect to

19   [her] needs based on her pregnancy, skin condition, and the herniated disk in her back."  Compl. ¶

20   106.  Costco argues that summary judgment in its favor is appropriate on Andrade's Failure to

21   Provide Reasonable Accommodation claim under FEHA because "[Andrade] cannot show that

22   Costco failed to accommodate any disability."  Mot. at 20:14–21:13.  Andrade contends that

23   Costco failed to provide a reasonable accommodation for her skin condition when it (1) did not

24   provide effective accommodations; and (2) limited her accommodations to "short-term

25   'transitional duty' despite permanent restrictions."  Opp. at 8:9–11:25.

26       Under FEHA, it is unlawful

27           [f]or an employer or other entity covered by this part to fail to make
            reasonable accommodation for the known physical or mental
28           disability of an applicant or employee.

United States District Court
Northern District of California

Cal. Gov't Code § 12940(m)(1). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position held or desired, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022) (cleaned up).

Under FEHA, it is also unlawful

> [f]or an employer to refuse to provide reasonable accommodation for an employee for a condition related to pregnancy, childbirth, or a related medical condition, if the employee so requests, with the advice of the employee's health care provider.

Cal. Gov't Code § 12945(a)(3)(A). "The language of section 12945(a)(3)(A) requires a successful plaintiff to prove at least three things: (1) that her employer refused to provide a reasonable accommodation, (2) for a condition related to pregnancy, childbirth, or a related medical condition, (3) when the employee so requested, with the advice of her health care provider." *Lopez v. La Casa De Las Madres*, 89 Cal. App. 5th 365, 380 (2023) (cleaned up).

"A reasonable accommodation is any modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Kaur*, 83 Cal. App. 5th at 345 (cleaned up). Whether an accommodation is reasonable is generally a question for the jury. *Id.* at 346.

Here, construing all evidence in the light most favorable to Andrade, the Court finds that a reasonable jury could find that Costco failed to provide reasonable accommodations to Andrade. Andrade contends that a factual dispute exists regarding whether Costco provided reasonable accommodations for her skin condition because there is "evidence that some assigned 'accommodated' tasks themselves involved chemical exposure (e.g., outdoor 'light cleaning' using sanitizer), contrary to Dr. Lee's restriction to minimize chemical exposure." Opp. at 9:24–26. The Court agrees. It is undisputed that Dr. Lee recommended Andrade "avoid tasks involving gloves or chemicals." Reply at 2:3–15. It is also undisputed that some of Andrade's transitional duty assignments involved exposure to chemical agents—Torres, the Food Court Supervisor, testified as much. *See* Torres Dep. Tr. at 18:14–19:6 (stating Andrade was assigned "light

cleaning outside" with "a sanitizer product, which is safe; it isn't dangerous to you, so that wouldn't require gloves")). Whether "a sanitizer product" was "safe" for Andrade's skin condition—and thus a reasonable accommodation—is a question of fact. Moreover, Costco's repeated assertions that Andrade "testified that after she submitted her request for an accommodation in March 2023, the issue of her having to use gloves and cleaning solutions at work 'got resolved'" flatly misstates the record. *E.g.,* Def.'s CSF at 4:12. Andrade testified that in April 2023, the glove use "got resolved." Andrade Dep. Tr. at 285:23–286:9. But Andrade never stated that Costco resolved the issue regarding her exposure to chemicals. And in fact, she testified that her transitional duty assignment involved the use of chemical cleaners. *Id.* at 74:11–15, 80:24–81:3. Therefore, summary judgment in Costco's favor is not warranted.

Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's Failure to Provide Reasonable Accommodation claim.

### F.    Failure To Engage In Interactive Process Claim (Claim 6)

Andrade alleges that Costco "failed to engage in a timely, good faith, interactive process with [her] to determine effective reasonable accommodations for [her] disability, if any." Compl. ¶ 118. Costco argues that summary judgment in its favor is appropriate on Andrade's Failure to Engage in Interactive Process claim under FEHA because "Costco fully engaged in the interactive process with [Andrade]." Mot. at 21:14–22:2. Andrade contends that summary judgment is improper because Costco (1) "failed to engage in a good-faith interactive process tailored to long-term restrictions" for her skin condition; and (2) did not "engage in any interactive process about the need for leave" regarding her back condition. Opp. at 1:22–2:19.

Under FEHA, it is unlawful

> [f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

Cal. Gov't Code § 12940(n). Once an employee initiates the process, "the employer has *a continuous obligation* to engage in the interactive process in good faith." *Kaur*, 83 Cal. App. 5th

1    at 347 (emphasis in original).  Whether an employer is responsible for a breakdown in the

2    interactive process is a question of fact.  *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal.

3    App. 4th 952, 985 (2008).

4         Here, construing all evidence in the light most favorable to Andrade, the Court finds that a

5    reasonable jury could find that Costco did not carry out its obligation to engage in the interactive

6    process with Andrade.  Andrade contends that Costco failed to engage in the interactive process

7    when it implemented a 30-day transitional duty assignment instead of permanent accommodations

8    for her skin condition.  Opp. at 12:12–26.  It is undisputed that Dr. Lee's restrictions did not have

9    an end date.  Reply at 4:1–8.  Although Costco maintains that Andrade's restrictions "would be re-

10    evaluated after a period of approximately 30-days consistent with Costco's policy," it is

11    undisputed that Costco did not review Andrade's accommodations after implementing the

12    transitional duty assignment.  Reply at 3:16–28; *see* Shields Dep. Tr. at 46:21–47:21.  Costco now

13    pivots and places the blame on Andrade, arguing that because her "medical restrictions lacked a

14    defined end date, she was required to provide Costco with updated documentation from her health

15    care provider by the expiration of the transitional duty offered."  Reply at 4:1–8.  But under

16    California law, it is *Costco* that has a continuous obligation to engage in the interactive process in

17    good faith.  *Kaur*, 83 Cal. App. 5th at 347; *see also Nadaf-Rahrov*, 166 Cal. App. 4th at 985

18    ("[T]he fact that an employer took some steps to work with an employee to identify reasonable

19    accommodations does not absolve the employer of liability under section 12940(n).").  So while

20    Costco's actions and policy may satisfy this obligation, they may not—that is a question for the

21    jury.  Therefore, summary judgment in Costco's favor is not warranted.

22         Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

23    Failure to Engage in Interactive Process claim.

24    **G.    Violation of CFRA/FMLA Rights Claim (Claim 7)**

25         Andrade brings two causes of action pursuant to the CFRA and FMLA, one alleging

26    retaliation and one alleging interference.[5]  Compl. ¶ 125.  Andrade alleges that Costco "interfered

27    _____

28    [5] Andrade alleges that Costco "violated the CFRA, FMLA, ADA, and FEHA by taking adverse

United States District Court
Northern District of California

1    with [her] right to take CFRA/FMLA" by "taking adverse actions against [her] because she had

2    taken and/or had requested to take leave" and by "criticizing [her] performance because [she] took

3    leave or requested to take leave." *Id.* ¶¶ 141, 146.

4         Costco argues that summary judgment in its favor is appropriate on Andrade's Violation of

5    CFRA and FMLA Rights claim because "[Andrade] received all requested leave." Mot. at 22:3–

6    17. Andrade contends that summary judgment is improper because "Costco's failure to inform

7    and designate CFRA/FMLA leave, its discouragement of leave, and its decision to count protected

8    absences as 'excessive' while firing [her] establish triable interference and retaliation claims."

9    Opp. at 21:12–14.

10        "The FMLA creates two interrelated, substantive employee rights: first, the employee has

11   a right to use a certain amount of leave for protected reasons, and second, the employee has a right

12   to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W.*

13   *Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). The FMLA sets forth two ways to protect

14   these rights. First, it is "unlawful for any employer to interfere with, restrain, or deny the exercise

15   of or the attempt to exercise, any right provided by the [FMLA]." *Id.* (citing 29 U.S.C. §

16   2615(a)(1)) (cleaned up). Second, it is unlawful for an employer to discriminate against someone

17   who opposes any practice made unlawful by the FMLA; this is also known as a retaliation claim.

18   *Id.* at 1124 (citing 29 U.S.C. § 2615(a)(2)).

19        "CFRA is a portion of FEHA that provides protections to employees needing family leave

20   or medical leave." *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 260 (2001) (cleaned up).

21   The CFRA protects the same employee rights as under the FMLA. *See* Cal. Gov't Code §

22   12945.2(q) ("It shall be an unlawful employment practice for an employer to interfere with,

23   restrain, or deny the exercise of, or the attempt to exercise, any right provided under this

24   section.").

25

26   _____

27   actions against [her] because she had taken and/or had requested to take leave." Compl. ¶ 141.
     Andrade's retaliation claim under FEHA is addressed above. *See supra*, Part IV.A. Other than
     this passing reference, Andrade does not allege a claim under the ADA, nor does she discuss any
28   ADA claim in her Opposition. *See generally* Compl.; Opp. Therefore, the Court addresses only
     Andrade's claims under the CFRA and FMLA in this section.

United States District Court
Northern District of California

The Court addresses each of Andrade's CFRA/FMLA claims below.  Because identical standards apply to the FMLA and CFRA, the Court's citations to FMLA caselaw apply equally to Andrade's claims under both statutes.  *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) ("This court has previously concluded that identical standards apply to the FMLA and to the CFRA, which means that violations of either statute constitute a violation of California public policy.") (cleaned up).

### 1.    CFRA/FMLA Interference Claim

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  *Bachelder*, 259 F.3d at 1122 (quoting 29 U.S.C. § 2615(a)(1)).  To prevail on a FMLA interference claim, "the employee must establish that:  (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."  *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (cleaned up).  "In interference claims, the employer's intent is irrelevant to a determination of liability."  *Id.*

Here, construing all evidence in the light most favorable to Andrade, the Court finds that a reasonable jury could find that Costco interfered with Andrade's rights under the CFRA and FMLA.  First, Andrade is correct that "[i]nformation sufficient to put the employer on notice triggers its duty to inquire and designate" under the two statutes.  Opp. at 15:6–18 (citing *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1256–57 (2008)).  Costco argues that it was not aware that any of Andrade's absences qualified for protection under the CFRA or FMLA.  Reply at 11:1–7.  But that is disputed.  Andrade testified that she asked Shields about FMLA coverage to excuse the days she missed due to her back condition, and that Shields told her to "look up in the employee handbook about that."  Andrade Dep. Tr. at 90:19–95:25.  And Costco does not proffer any evidence showing that it provided Andrade with information on the CFRA or FMLA.  Second, Costco agrees with Andrade "that employers shall not count protected absences as 'occurrences' supporting attendance violations or otherwise negatively affecting one's employment."  Reply at 10:13–17 (citing *Bachelder*, 259 F.3d at 1121).  As discussed above, an issue of fact exists

United States District Court
Northern District of California

regarding whether Costco counted Andrade's absences for her back condition against her in its termination decision.  Therefore, summary judgment in Costco's favor is not warranted.

Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's CFRA/FMLA Interference claim.

### 2.    CFRA/FMLA Retaliation Claim

Under 29 U.S.C. § 2615(a)(2), "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  "Under the FMLA, to make a *prima facie* showing, a plaintiff must establish that (1) he engaged in a protected activity under the FMLA; (2) he suffered some adverse employment action by the employer following the protected activity; and (3) the adverse employment action was causally linked to the protected activity." *Yphantides v. Cnty. of San Diego*, 660 F. Supp. 3d 935, 958 (S.D. Cal. 2023) (cleaned up).   The "[p]laintiff is required to establish a 'causal connection' between him taking statutory-protected medical leave and a request for disability accommodation, and the employment decision at issue to succeed on a retaliation under the CFRA [and] FMLA." *Id.* at 959.  "In some cases, temporal proximity between the protected activity and an adverse employment action can, by itself, constitute sufficient circumstantial evidence or an inference of retaliation but it must be close in time." *Id.*

Here, construing all evidence in the light most favorable to Andrade, the Court finds that a reasonable jury could find that Costco retaliated against Andrade for exercising her rights under the CFRA and FMLA.  Andrade argues that Costco terminated her "shortly after protected leave requests, in part because of those requests."  Opp. at 16:8–21.  It is undisputed that Andrade went to the ER on May 8, 2023, testified that she obtained a note from the ER doctor excusing her from work on May 8 and 9, 2023, and that Costco terminated Andrade's employment on May 15, 2023.  Mot. at 8:13–15; Opp. at 12:12–25; Pl.'s SSF at 10:5; Def.'s CSF at 23:24.  Andrade testified that she asked Shields about FMLA coverage to excuse the days covered by the note, and that Shields told her to "look up in the employee handbook about that."  Andrade Dep. Tr. at 90:19–95:25.  Given this temporal proximity, a reasonable jury could find that Costco terminated Andrade's employment because she requested leave for her absences. *Cf. Stegall v. Citadel Broad. Co.*, 350

United States District Court
Northern District of California

1    F.3d 1061, 1069 (9th Cir. 2003) (holding that factual issue existed where employer terminated

2    employee nine days after employee's protected conduct).  Therefore, summary judgment in

3    Costco's favor is not warranted.

4           Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

5    CFRA/FMLA Retaliation claim.

6    **H.      Intentional Infliction Of Emotional Distress Claim (Claim 8)**

7           Costco argues that summary judgment in its favor is appropriate on Andrade's Intentional

8    Infliction of Emotional Distress ("IIED") claim because (1) it is preempted by the California

9    Workers' Compensation Act ("WCA"); and (2) "the conduct alleged is not extreme or

10   outrageous."  Mot. at 23:4–24:13.  Andrade contends that summary judgment is improper because

11   (1) "FEHA-implicated conduct and retaliatory treatment [] are outside workers'-comp

12   exclusivity"; and (2) "a jury in this case could find outrageous conduct[.]"  Opp. at 22:2–23:13.

13   **1.      Workers' Compensation Act Preemption**

14          Under California law, "[w]here the acts are a normal part of the employment relationship

15   or workers' compensation claims process, or where the motive behind these acts does not violate a

16   fundamental policy of this state then the cause of action is barred" under the WCA.  *Charles J.*

17   *Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 812 (2001) (cleaned up).  The

18   California Supreme Court explained that the WCA preempts an employee's IIED claim as

19   follows:

20               when the misconduct attributed to the employer is actions which are
                 a normal part of the employment relationship, such as demotions,
21               promotions, criticism of work practices, and frictions in negotiations
                 as to grievances, an employee suffering emotional distress causing
22               disability may not avoid the exclusive remedy provisions of the Labor
                 Code by characterizing the employer's decisions as manifestly unfair,
23               outrageous, harassment, or intended to cause emotional disturbance
                 resulting in disability.
24

25   *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987).

26          Here, the Court agrees with Andrade that the WCA "does not bar IIED to the extent that

27   the distress flows from FEHA violations."  Opp. at 22:12–15.  Contrary to Costco's assertion,

28   Andrade's cited cases do not stand for the proposition that only IIED claims stemming from

United States District Court
Northern District of California

actions outside of employment fall outside the WCA's exclusivity provision.  Reply at 14:1–10.

In *Accardi v. Superior Ct.*, the court held that "a claim for emotional and psychological damage,

arising out of employment, is not barred where the distress is engendered by an employer's illegal

discriminatory practices."  17 Cal. App. 4th 341, 352 (1993).  And in *Light v. Dep't of Parks &*

*Recreation*, the court held that a plaintiff "may pursue a claim for intentional infliction of

emotional distress in the employment context where the conduct at issue violates FEHA and also

satisfies the elements of the [IIED] claim."  14 Cal. App. 5th 75, 101 (2017).  Therefore, as

alleged, Andrade's IIED claim is not barred by the WCA.

### 2.    Sufficiency of IIED Claim

Under California law, "[a] cause of action for intentional infliction of emotional distress

exists when there is (1) extreme and outrageous conduct by the defendant with the intention of

causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035,

1050 (2009) (cleaned up).  "A defendant's conduct is 'outrageous' when it is so extreme as to

exceed all bounds of that usually tolerated in a civilized community.  And the defendant's conduct

must be intended to inflict injury or engaged in with the realization that injury will result."  *Id.* at

1050–51 (cleaned up).  Whether "conduct has been sufficiently extreme and outrageous to result

in liability" is a question of fact.  *Cross v. Bonded Adjustment Bureau*, 48 Cal. App. 4th 266, 283

(1996).

Here, construing all evidence in the light most favorable to Andrade, the Court finds that a

reasonable jury could find that Costco's conduct was extreme or outrageous.  Andrade argues that

"[a] jury in this case could find outrageous conduct where management (1) refused to accept a

doctor's note and told a probationary employee facing medical issues she was 'in hot shit right

now,' (2) fast-tracked write-ups and termination within three days of the note, and (3) tolerated or

minimized demeaning 'Miss America'/'White Girl' comments before belated 'coaching.'"  Opp.

at 22:16–23.  Costco responds that none of this conduct, even if true, supports an IIED claim.

Reply at 14:11–17.  *Alcorn v. Anbro Eng'g, Inc.*, cited to by Andrade, is instructive.  Opp. at

1    22:21–23 (citing 2 Cal. 3d 493, 498–99 (1970)).  There, the California Supreme Court held that

2    the plaintiff pleaded a sufficient IIED claim where the plaintiff alleged the defendants

3    "intentionally humiliated plaintiff, insulted his race, ignored his union status, and terminated his

4    employment, all without just cause or provocation."  *Alcorn*, 2 Cal. 3d at 498–99.  Similarly, albeit

5    on summary judgment, Andrade proffers evidence that she experienced comments based on her

6    race, poor treatment following hospitalization for medical issues, and termination that was not

7    based on good cause.  Because a jury could find this conduct extreme or outrageous, a factual

8    dispute exists.  *See id.* at 499 ("Where reasonable men may differ, it is for the jury, subject to the

9    control of the court, to determine whether, in the particular case, the conduct has been sufficiently

10   extreme and outrageous to result in liability.").  Moreover, Costco does not point to any case

11   where an IIED claim stemming from wrongful termination and discrimination was deficient on

12   summary judgment.  Therefore, summary judgment in Costco's favor is not warranted.

13        Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Andrade's

14   IIED claim.

15   **I.    Claim For Punitive Damages**

16        Andrade seeks "punitive damages where allowed by law."  Compl. at 34.  Andrade alleges

17   that punitive damages are appropriate for all her claims.  *See generally id.*  Costco argues that

18   summary judgment in its favor is appropriate on Andrade's request for punitive damages because

19   Andrade "has not presented any evidence of conduct rising to the level of oppression, fraud, or

20   malice" committed "by an officer, director, or managing agent of Costco."  Mot. at 24:14–21.

21   Andrade contends that a jury could find that actions by Shields, McKenna, and Nunez were

22   malicious or oppressive.  Opp. at 23:14–24:7.

23        Under California law, in a tort action,

24        where it is proven by clear and convincing evidence that the defendant
     has been guilty of oppression, fraud, or malice, the plaintiff, in
25        addition to the actual damages, may recover damages for the sake of
     example and by way of punishing the defendant.
26

27   Cal. Civil Code § 3294(a).  But,

28        [a]n employer shall not be liable for damages pursuant to subdivision

United States District Court
Northern District of California

> (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

*Id.* at § 3294(b). "In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577 (1999). The California Supreme Court explained:

> principal liability for punitive damages [does] not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy. Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees.

*Id.*

Here, the Court finds that the undisputed evidence shows that Andrade cannot demonstrate that any conduct was committed by an officer, director, or managing agent of Costco. Costco argues that "none of the individuals identified by [Andrade] qualify as 'managing agents' of Costco as required to impose punitive liability on a corporate employer" because Andrade "merely labels local supervisors and managers as 'managing agents' without any factual basis or legal support for that conclusion." Reply at 15:5–8. The Court agrees. Andrade proffers evidence that Shields and McKenna "implemented Costco's leave/accommodation protocols," that Shields "had final authority to terminate probationary employees," and that Nunez "directed revision of [Andrade's] performance review to add criticism[.]" Opp. at 23:22–24:1. But Andrade does not proffer any evidence that these three Costco employees possessed "discretionary authority over decisions that ultimately determine corporate policy." *White*, 21 Cal. 4th at 577. Therefore, because Andrade cannot prove that the conduct she complains of was committed by a managing

agent of Costco, an essential element of her claim for punitive damages, summary judgment for Costco is warranted. *Id.*

Accordingly, the Court **GRANTS** Costco's Motion for Summary Judgment on Andrade's claim for punitive damages.

**V.    CONCLUSION**

For the foregoing reasons, Costco's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**


Dated: December 15, 2025

THOMAS S. HIXSON
United States Magistrate Judge